405 F.2d 283
 Joe T. ROBERTS and wife, Nellie C. Roberts, Appellants,
v.
FUQUAY-VARINA TOBACCO BOARD OF TRADE, INC., Roy Talley, Arthur Talley, Dan Brissom, Dan Talley, Sherril Akin, Herbert Akin, John W. Smith, Bill Talley and Billy Talley, Appellees.
 No. 11583.
 United States Court of Appeals Fourth Circuit.
 Argued October 9, 1968.
 Decided December 19, 1968.
 
 Edgar R. Bain, Lillington, N. C., for appellants.
 Thomas L. Young, Rocky Mount, N. C. (F. E. Winslow, Rocky Mount, N. C., and Thomas A. Banks, Raleigh, N. C., on brief) for appellees.
 Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN, WINTER, CRAVEN and BUTZNER, Circuit Judges, sitting en banc.
 HAYNSWORTH, Chief Judge:
 
 
 1
 Problems in the marketing of tobacco, in the context of the anti-trust laws, are again before us. The plaintiffs again appeal from the denial of an injunction against enforcement of a bylaw of the Fuquay-Varina Tobacco Board of Trade which allots to a new warehouseman a smaller proportion of selling time per unit of selling space than is allotted to older warehousemen.
 
 
 2
 When the case was first before us, we concluded that the allotment of less selling time to new warehouse units was not clearly unreasonable in light of the great excess of existing warehouse space and the provision giving the new entrant an opportunity to increase its allotment through the use of "free selling time." We held that an injunction was inappropriate, but, while recognizing this Court's incapacity, we thought someone else might be able to devise a more equitable plan. We, therefore, remanded the case with instructions to the District Court to seek the advice of the Federal Trade Commission, leaving the Board of Trade free to operate under its plan pending the further proceedings in the court. Roberts v. Fuquay-Varina Tobacco Board of Trade, Inc., 4 Cir., 332 F.2d 521.
 
 
 3
 In similar fashion, we disposed of the Danville, Virginia tobacco case, after an extended statement and consideration of the problem. Danville Tobacco Ass'n v. Bryant-Buckner Associates, Inc., 4 Cir., 333 F.2d 202.
 
 
 4
 In due time, the Federal Trade Commission expressed its opinion that newly constructed warehouse units should receive the identical treatment as the old ones. In the Danville case, the District Court refused to accept the suggestion of the Federal Trade Commission, and we affirmed. Danville Tobacco Ass'n v. Bryant-Buckner Associates, Inc., 4 Cir., 372 F.2d 634. We felt that the acute problem of overbuilding on an already excessively overbuilt market could not be ignored. We upheld the Tobacco Association's plan, though we recognized that it was "certainly not the ideal" nor "a criterion of reasonableness in all circumstances." Again we expressed our inability to devise plans and the limitation of our function to a review of the existing plan.
 
 
 5
 The District Court had held this case pending our disposition of the second Danville case. It then entered a similar order, from which this appeal is taken.
 
 
 6
 Despite the appellants' claim that their initial disadvantage was greater and the ameliorating provision for the use of "free time" less compensatory, because of the amount of such time available in the market, we find the two cases altogether comparable. The plaintiffs, new entry warehousemen, have not shown any anti-trust infirmity in the Board of Trade's plan under the principles applied in the Danville case. On the authority of Danville, we affirm the denial of injunctive and other relief here.
 
 
 7
 Nothing has occurred, however, to dispel our original and continuing thought that it may be possible to devise a more equitable plan which would still avoid the introduction of chaotic conditions into the market through unrestricted construction of unnecessary warehouse space. Our initial suggestion that the advice of the Federal Trade Commission be sought proved abortive, for its ex parte submission, in which it did not come to grips with the problem, was not persuasive. It is still true, however, that the only plans coming before us which have merited our consideration, are those devised by the Boards of Trade or Tobacco Associations, composed entirely of warehousemen and tobacco purchasers, though acting in a quasi-governmental capacity. The impact of those plans has been considered only in its effect upon new warehousemen in the market. There has been no consideration of its effect or of the effect of any possible alternative upon users of the market. The interests of tobacco growers and of tobacco buyers[1] have been unrepresented as have those of the public. The warehousemen have an economic stake in the markets' operations, but the markets exist for the purpose of serving the interests of buyers and sellers of tobacco. Those interests, we think, deserve inquiry and consideration in an appraisal of any plan containing market restrictions and limitations.
 
 
 8
 We are of the opinion that there is reason to believe a more equitable scheme might evolve out of an adversary proceeding in which all affected interests were effectively represented. If such a proceeding resulted in a finding that the plan of the Board of Trade, without modification, was preferable to all alternatives, its acceptability for future years would be substantially buttressed by the proceeding. If a better alternative were found, it could result in much private and public advantage.
 
 
 9
 While on the present record, we affirm denial of all relief to the plaintiffs for past years and for ensuing market seasons pending further proceedings, the case will be remanded to the District Court to invite the active intervention and participation of other affected groups and interested public officials and agencies. We contemplate the inclusion of tobacco farmers and their organizations, the principal purchasers of tobacco offered on the Fuquay-Varina market and of interested federal and state agencies, including the Attorney General of the United States, the Secretary of Agriculture, the Federal Trade Commission, North Carolina's Attorney General and her Commissioner of Agriculture. The District Court should invite and welcome the intervention and participation of any other persons, organizations or agencies, public or private, having an interest in the operation of the market and a capacity to contribute to the elucidation of the problem.
 
 
 10
 It is expected that with all affected interests before the court and with their assistance and that of federal and state officials and agencies having supervisory or regulatory authority over the operation of the market or responsibility for the enforcement of federal or state laws, the problem may be explored in greater depth than has yet been possible and other alternatives, worthy of consideration, may be developed.
 
 
 11
 As to future years, nothing we have said regarding the acceptability of the plan of the Board of Trade, or any similar plan, under the anti-trust laws shall circumscribe the scope of the inquiry or limit the District Court's reassessment of it on the basis of the expanded record which may be made on remand.
 
 
 12
 Affirmed and remanded.
 
 
 
 Notes:
 
 
 [1]
 Under the governing statute of North Carolina (General Statutes § 106-465), tobacco purchasers are, or may be, members of the Board of Trade. To the extent that they are, they have had technical representation through the Board of Trade. Inquiry, however, has not focused on their interests